IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 20, 2005 Session

## ELI J. LANDRY, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-838    Cheryl Blackburn, Judge**

**No. M2004-03066-CCA-R3-PC - Filed October 26, 2005**

The petitioner, Eli J. Landry, Jr., pled guilty in the Davidson County Criminal Court to two counts of aggravated sexual battery, a Class B felony, and the trial court sentenced him as a Range II, multiple offender to concurrent sentences of thirteen years.  Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel and that his guilty pleas were not knowingly and intelligently entered.  The post-conviction court denied the petition, and the petitioner appeals.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Thomas B. Luck, Nashville, Tennessee, for the appellant, Eli J. Landry, Jr.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At the petitioner's guilty plea hearing, the State gave the following factual account of the crimes:  In 2000, the ten-year-old victim told her mother that in 1994 or 1995, the petitioner had kissed her vagina and forced her to touch his penis.  At the time of the crimes, the petitioner and his wife had been living with the petitioner's stepson, and the victim would visit the stepson's young daughters.  According to the victim, the kissing and touching occurred in the petitioner's bedroom. The victim's mother contacted the Metropolitan Nashville Police Department, and two officers

interviewed the petitioner in Louisiana, where the petitioner was living at the time of the victim's report. During the interview, the petitioner told the officers that he rubbed the victim's vaginal area several times and that there was a fifty or sixty percent chance that he kissed her vagina. Although the petitioner had been charged with two counts of child rape and four counts of aggravated sexual battery, he pled guilty to two counts of aggravated sexual battery and received two concurrent, thirteen-year sentences.

The petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel and that he did not knowingly and intelligently enter his guilty pleas. At the post-conviction hearing, Lillie Landry, the petitioner's wife, testified that she and the petitioner had been married for twenty-two years. The petitioner's trial attorney would not answer her telephone calls and would not visit the petitioner in jail. She stated that she did not like the attorney's attitude and that she did not believe he was going to help the petitioner. She said that the petitioner's attorney told her he was going to make sure the petitioner spent some time in prison, that he discouraged her from testifying at the petitioner's trial, and that he told her she could not attend the petitioner's guilty plea hearing. She stated that she would have testified at trial that the petitioner was innocent. She said that the petitioner took medicine and that he became disoriented, dizzy, and nauseous without his medication. She said that the petitioner was not guilty and that he pled guilty because his attorney told him to.

Nathan Morris, the petitioner's stepson, testified that he met with the petitioner's attorney one time. During the meeting, the attorney played an audiotape of the petitioner's confession, and they discussed the tape. He said that if the petitioner's case had gone to trial, he would have testified that the victim's allegations against the petitioner were untrue. He stated that he lived in the house where the alleged crimes occurred, that his two daughters also lived there, and that the petitioner did not abuse his daughters. He stated that the petitioner's attorney discouraged him from testifying at the petitioner's trial, that the attorney believed the petitioner was guilty, and that the attorney told his mother they could not attend the petitioner's guilty plea hearing. On cross-examination, Morris acknowledged that the petitioner made "some very damaging admissions" on the audiotape and that the petitioner admitted having inappropriate sexual contact with the victim. He stated that if the petitioner had gone to trial, he could have testified that he never saw the petitioner exhibit any inappropriate behavior.

The petitioner testified that he took Antivert for dizziness and that he did not take his medicine on the day of his guilty pleas. He stated that at the guilty plea hearing, he told the trial court that he understood what he was doing because he was "fed up with [his attorney] completely" and because he "just wanted to get everything over with." He stated that he had tried to fire his trial attorney but that the trial court would not let him. He said that he told his attorney he wanted to take a polygraph test but that his attorney told him it would be inadmissible in court. He stated that his attorney told him that he was going to make sure the petitioner spent some time in prison. When he pled guilty, he thought he was going to receive a twelve-year sentence at eighty-five percent.

The petitioner testified that his attorney told him that he would not be able to appeal his case

2

or get parole if he pled guilty. He stated that on the audiotape of his police interview, he denied abusing the victim but that part of the tape was erased. He stated that his attorney did not investigate the police officers' behavior. The petitioner said that he was in Alabama on the date of the alleged offenses and that his attorney never investigated his claim that he was not guilty. On cross-examination, the petitioner testified that his attorney should have used DNA evidence to prove he did not commit the crimes and that he pled guilty a few days before he was scheduled to go to trial. He stated that his attorney failed to investigate whether the police audiotaped him without his knowledge and never discussed what questions were going to be asked at trial. He stated that he lied to the trial court at the guilty plea hearing because his attorney was not helping him and because he wanted to "get this here over with." He stated that he did not understand what he was doing at the hearing and that he lied when the trial court asked him if he was satisfied with his attorney's representation.

The petitioner's trial attorney testified that he had been licensed to practice law since 1996 and was appointed to represent the petitioner. At the time of the petitioner's guilty pleas, he had been preparing for trial. He said that the petitioner's wife wanted to testify for the petitioner but was not an eyewitness to the crimes and that he did not believe her opinion testimony would be admissible. He stated that he was unaware of any evidence available for DNA testing and that he never told the petitioner that he was going to make sure the petitioner spent some time in prison. He said, however, that he told the petitioner that the petitioner's statements to the police would be damaging at trial. He said that he talked with other lawyers about the petitioner's confession and that they agreed there was no basis to suppress the petitioner's statement. He stated that the petitioner was reluctant to plead guilty. He was unaware of anything that would have made the petitioner incapable of understanding his guilty pleas.

On cross-examination, the petitioner's trial attorney acknowledged that the petitioner did not want him on the case. He stated that at some point, he filed a motion to be relieved as counsel but that the trial court denied the motion. Counsel denied telling Lillie Landry that she could not attend the petitioner's guilty plea hearing and stated that he was unaware of any police misconduct in the case. He stated that he investigated the petitioner's case and met with the petitioner's wife, one of his sons, and two police officers. He stated that he did not tell the petitioner's wife and son that he believed the petitioner was guilty but told them that the evidence against the petitioner was strong and that there was a strong likelihood the petitioner would be convicted. He stated that on the day of the petitioner's guilty plea hearing, he did not make sure the petitioner was taking his medication and did not remember the petitioner telling him that the jailers had not given the petitioner his medicine.

In denying the petition for post-conviction relief, the trial court relied heavily on the guilty plea hearing transcript. The trial court noted that at the guilty plea hearing, it asked the petitioner about the petitioner's communications with his attorney, and the petitioner indicated that he and his attorney had discussed the charges against him, the possible ranges of punishment, and the facts of the case. The trial court also noted that it asked the petitioner if he was satisfied with his trial attorney's work and that the petitioner responded affirmatively. Regarding his attorney's failure to

request DNA testing, the trial court noted that the alleged crimes took place in 1994 or 1995 but were not reported until 2000. Therefore, there was no DNA evidence. Regarding the audiotaped confession, the trial court noted that the petitioner's audiotaped interview contained damaging statements and that there was no evidence the police altered the tape. Finally, regarding the petitioner's medication, the trial court noted that it asked the petitioner at the guilty plea hearing if he was taking any medication and that the petitioner told the trial court he had not been receiving one of his medicines for five months and that he needed the medicine for dizziness. The trial court then asked the petitioner if he was having any trouble understanding what he was doing, and the petitioner answered no. The trial court noted that the petitioner demonstrated during the plea colloquy that he was able to make decisions and that his mind was clear.

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney prevented his wife and stepson from testifying, failed to discuss the evidence of the case with him, failed to investigate his case adequately, and failed to use DNA evidence to exonerate him. The petitioner also claims that he did not knowingly and intelligently enter his guilty pleas because his trial attorney used "outrageous coercive attempts" to prevent him from going to trial by telling him and his family that the attorney would make sure the petitioner went to prison, failed to advise him about the consequences of his pleas, failed to advise him about his options if he did not plead guilty, told him that he would receive a twelve-year sentence at eighty-five percent, and failed to ensure that he received his Antivert on the day of the hearing. The State claims that the petitioner has failed to show that he received the ineffective assistance of counsel or that he did not knowingly and intelligently enter his guilty pleas. We agree with the State.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

4

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The petitioner claims that he received the ineffective assistance of counsel because his attorney discouraged his wife and stepson from testifying at his trial. However, the attorney testified at the post-conviction hearing that Lillie Landry and Nathan Morris were not eyewitnesses to the crimes and that he did not believe their opinions as to the petitioner's guilt would have been admissible. Moreover, the attorney testified that if the petitioner had gone to trial, his confession would have been admissible and damaging. Our review of the guilty plea hearing transcript shows that the petitioner accepted the State's plea offer because he had considered the possible penalties if he were convicted at trial and "didn't like it." In light of the petitioner's confession, we conclude that he has not demonstrated he would have gone to trial or that the outcome of his case would have been different if his wife and stepson had testified. The petitioner also claims that his attorney failed to investigate his case and failed to request that DNA evidence be tested. However, counsel testified that he interviewed the petitioner's wife, one of his sons, and two of the officers involved in the case, and there is no indication in the record that further investigation of the case would have resulted in a different outcome. In addition, given that the victim reported the abuse several years after it occurred, there was no evidence available for DNA testing. The petitioner has failed to show that his attorney rendered deficient performance or that the was prejudiced by any deficiency.

The petitioner claims that his guilty pleas were not knowingly and intelligently entered because his attorney prevented him from going to trial by telling him and his family that he would make sure the petitioner went to prison, failed to advise him about the consequences of his pleas, failed to advise him about his options if he did not plead guilty, told him that he would receive a twelve-year sentence at eighty-five percent, and failed to make sure that he received his medication for dizziness on the day of the pleas. However, the petitioner's attorney testified that he told the petitioner's family that the State's case against the petitioner was strong but that he never told the petitioner he was going to make sure the petitioner spent time in prison. The trial court obviously accredited the attorney's testimony over that of the petitioner. Moreover, we have reviewed the guilty plea hearing transcript and it reveals that during the guilty plea hearing, the trial court asked the petitioner if his attorney had explained the charges to him, the ranges of punishment, and the State's evidence against him, and the petitioner answered yes. The trial court also asked the petitioner if he believed counsel had done everything possible in the petitioner's case, and the petitioner answered, "Yes, ma'am." In addition, the hearing transcript shows that the trial court advised the petitioner that he was going to receive a thirteen-year sentence at one hundred percent

5

and that the trial court asked the petitioner if he understood his sentences. The petitioner again answered, "Yes, ma'am."

Regarding the petitioner's medication, the guilty plea hearing transcript reveals that the trial court asked the petitioner if he was taking any medication and that the petitioner stated he was supposed to be taking medication for dizziness but had not taken his medication for five months. The trial court asked the petitioner if he understood what he was doing, and the petitioner stated, "I can understand you right now; yes, ma'am. . . . I understand what I'm doing." Our review of the guilty plea hearing transcript shows that the petitioner answered all of the trial court's questions, said yes and no at the appropriate times, and repeatedly stated that he understood his guilty pleas. We conclude that the petitioner's pleas were knowingly and intelligently entered.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE